**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MATTHEW DUNDON, AS THE TRUSTEE OF THE ENDO GENERAL UNSECURED CREDITORS' TRUST,** | : | **Civil Action** |
| ***Plaintiff,*** | : | |
| **v.** | : | |
| **ACE PROPERTY AND CASUALTY INSURANCE COMPANY, et al.,** | : | **No. 24-4221** |
| ***Defendants.*** | : | |

**MEMORANDUM**

**KENNEY, J.** **October 26, 2026**

Defendants TDC Specialty Insurance Company ("TDC") and Newline Corporate Name Limited ("Newline") move for summary judgment seeking dismissal with prejudice of Counts I and II of the Amended Complaint (ECF No. 113) as they pertain to the Trustee of the Endo General Unsecured Creditors' Trust's (the "Trustee's") demand for coverage under the third layer excess policy issued by TDC and the fourth layer excess policy issued by Newline. ECF No. 468. For the reasons set forth below, the Court will **GRANT** Defendants TDC and Newline's Motion for Summary Judgment (ECF No. 468).

## I. BACKGROUND

This is an insurance coverage dispute brought by the Trustee on behalf of Endo International PLC ("Endo"). ECF No. 113. The Trustee is seeking insurance coverage for defense costs and settlement payments related to opioid-related lawsuits. ECF No. 470 ¶ 1. The underlying lawsuits stem from Endo's alleged "perpetuation of the opioid crisis." ECF No. 469 at 1. Among the underlying opioid-related lawsuits are various types of lawsuits, and likewise, the Trustee makes various insurance claims related to the different suits. Related to one group of lawsuits, the

"PI/NAS suits," the Trustee makes PI Opioid Claims and NAS Opioid Claims under the Product Policies issued from 2016–2017 (the "2016–2017 Product Policies"). ECF No. 470 ¶ 3. Defendant TDC issued a third layer excess policy to Endo as part of the 2016–2017 Product Policies. *Id.* ¶ 12. This policy provided specified excess coverage of $10 million excess of $65 million in underlying insurance. *Id.* Exhaustion of the $65 million in underlying insurance is a necessary condition for Endo to receive coverage under this policy. *Id.* Defendant Newline issued a fourth layer excess policy to Endo as part of the 2016–2017 Product Policies. *Id.* ¶ 13. This policy provided excess coverage of $15 million excess of $75 million in underlying insurance. *Id.* Exhaustion of the $75 million in underlying insurance is a necessary condition for Endo to receive coverage under this policy. *Id.*

On February 10, 2026, this Court issued an Order and Memorandum (ECF No. 392) which established that the parties' coverage obligations under the 2016–2017 Product Policies could only be triggered by three PI/NAS suits. Since that finding, including in Opposition to the present motion, the Trustee does not contest that the total amount of potentially recoverable defense and indemnity costs for the relevant PI/NAS suits is about $60 million. *Id.* ¶ 18. Indeed, the parties have stipulated that the total defense costs include $24,580,224.30 in one lawsuit, $265,212.38 in another lawsuit, and $231,967.77 in the final relevant lawsuit. *Id.* The indemnity costs include $35,100,491.20 from one lawsuit. *Id.* There are no indemnity costs sought in two of the three PI/NAS suits. *Id.* All three PI/NAS suits are concluded, so Endo will not be charged any additional costs. Because the recoverable costs related to the PI/NAS suits does not exhaust the underlying insurance amounts required by the 2016–2017 Product Policies, Defendants TDC and Newline now move for Summary Judgment as to Counts I and II of the Trustee's Amended Complaint. ECF No. 468. In doing so, these Defendants are seeking dismissal with prejudice. *Id.* The Trustee

responded in opposition to summary judgment. ECF No. 478. Accordingly, the Defendants' Motion for Summary Judgment is now ripe for review.

## II. Legal Standard

When deciding a motion for summary judgment, the Court's role is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As relevant here, a fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Courts must view the record "in the light most favorable to the nonmoving party." *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (citation omitted). However, "[s]peculation" and "conclusory allegations" are insufficient to defeat a summary judgment motion. *Id.* (alteration in original) (citation omitted). Ultimately, only disputes based on which a "reasonable jury could return a verdict for the nonmoving party" can support the denial of a motion for summary judgment. *Id.* (citation omitted).

## III. DISCUSSION

A previously live case or controversy may become moot if "changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 596 (3d Cir. 2010) (quoting *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1246 (3d Cir. 1996)). The doctrine of mootness ensures that the Court is not deciding cases where one or more parties lack a legally cognizable interest in the outcome of the lawsuit. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citations omitted); *see also*

*Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (citation omitted). Therefore, the Court must consider whether there is an active case or controversy at all stages and not just at the start of litigation. *See Already, LLC*, 568 U.S. at 90–91 (citation omitted).

Based on the applicable law and facts as stipulated, Defendants TDC and Newline cease to have a legally cognizably interest in this lawsuit because a judgment in favor of the Trustee would not require coverage under the 2016–2017 Product Policies. Endo's insurance coverage with TDC provides that:

> [TDC] will pay on behalf of the insured, up to the applicable Limit of Liability shown in ITEM 3 of the Declarations, any loss, damages, judgments, settlements, and defense costs in excess of the total limits of liability for all applicable underlying insurance when an insured is legally obligated to pay as a result of a covered claim; provided that:
>
> (A) such underlying insurance also applies and has been exhausted by actual payment thereunder, or would apply but for the exhaustion of the total limits of liability thereunder . . .
>
> (B) we will ***not have any obligation to make any payment hereunder unless and until the full amount of the total limits of liability of such underlying insurance has been paid*** by the issuer or issuers of such underlying insurance or by the insured; and
>
> (C) our obligation to pay loss, damages, judgments, settlements, and defense costs as a result of a covered claim after the date of exhaustion of the full amount of the total limits of liability of such underlying insurance shall be excess of any applicable deductible or retention under the underlying insurance.

ECF No. 470 ¶ 14 (emphasis added). The parties agree that this policy "sits above $65 million in underlying insurance . . . and therefore coverage is only potentially available if the Trustee . . . is able to establish an entitlement to coverage for $65 million in underlying damages[.]" ECF No.

469 at 9; *see* ECF No. 470 ¶¶ 8, 12 ("The TDC 2016–17 Excess Policy has a limit of liability of $10 million above $65 million in underlying limits and retentions.").

Endo's insurance coverage with Newline provides that:

> [Newline] hereby agree[s] . . . [to] pay on behalf of the Insured all sums which the Insured shall be obligated to pay by reason of liability as covered by and as more fully defined in the policy issued by the 'Underlying Issuers' . . . ***liability attaches in the event of reduction or exhaustion of any aggregate Underlying Limi***t as set forth in the Schedule in Item 6, and designated 'Underlying Limit(s) of Insurance by reason of losses paid thereunder, whether by an Underlying Insurer or the Insured, then this Policy . . . shall: (1) in the event of reduction, pay the excess of such reduced Underlying Limit; (2) in the event of exhaustion, continue in force as Lead Underlying Insurance.

*Id.* ¶ 16 (emphasis added). The parties agree that this policy "sits above $75 million in underlying insurance . . . and therefore coverage is only potentially available if the Trustee . . . is able to establish an entitlement to coverage for $75 million in underlying damages[.]" ECF No. 469 at 9; *see* ECF No. 470 ¶¶ 8, 13 ("The 2016–17 Newline Policy has a limit of liability of $15 million, above $75 million in underlying limits and retentions.").

The plain meaning of these policies makes clear that the policies are not triggered until the underlying coverage is exhausted. ECF No. 470 ¶¶ 8–13. As in traditional contractual interpretation, courts interpreting insurance contracts aim "to ascertain the intent of the parties as manifested by the language of the written instrument." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004) (quoting *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)); *see also Kurach v. Truck Ins. Exch.*, 235 A.3d 1106, 1116 (Pa. 2020) (finding that insurance policies are governed by "traditional principles of contract interpretation" (citation omitted)). When contractual language is clear and unambiguous as to its plain meaning, the Court will apply that plain meaning. *See Nationwide Life Ins. Co. v. Commonwealth Land Title*

*Ins. Co.*, 687 F.3d 620, 623 (3d Cir. 2012) (citation omitted); *see also J.C Penney Life Ins. Co.*, 393 F.3d at 363.

In addition to instructing a plain meaning interpretation of the TDC and Newline 2016–2017 Product Policies, caselaw supports that "a true excess or secondary policy is not 'triggered' or required to pay until the underlying primary coverage has been exhausted." *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996) (quoting *Occidental Fire & Cas. Co. v. Brocious*, 772 F.2d 47, 53–54 (3d Cir. 1985)). Thus, as a matter of law, the TDC and Newline 2016–2017 Product Policies are only triggered once the Trustee exhausts the underlying limits below. *Id.*

In this case, the Trustee agrees that the underlying limits of the policies have not been reached. ECF No. 470 ¶ 18. ("For the 2016–17 Product Policies, the Trustee seeks coverage for $60,177,895.65 in defense and indemnity costs in connection with the [PI/NAS] lawsuits.") Further, in a subsequent filing, the Trustee's representations implied that the total coverage sought may be well below the stipulated total. That is, as of September 29, 2026, the Trustee represented in his Response in Opposition to Defendant Gemini Insurance Company's Motion for a Protective Order that Trustee was not seeking to recoup defense costs from one of the PI/NAS lawsuits. ECF No. 524 at 16 ("Endo already paid for its own defense, and the [PI/NAS] suit settled in 2021. ***Nor is the Trustee seeking to recoup those costs***") (emphasis added). If true, the total coverage sought as relevant to the 2016–2017 Product Policies is below $55,000,000 as the stipulated amount includes the defense costs which Trustee now claims he is no longer seeking. *Id.*; *see also* ECF No. 542 at 2 (calculating that "if taken at face value," this admission "places the Trustee's claims against the 2016 tower of insurance well below the $55 million attachment point").

The Court, therefore, agrees with the Defendants that "no justiciable case or controversy exists between the Trustee or Newline[.]" ECF No. 46 at 12. TDC and Newline must, then, be dismissed from this action, because a decision completely favorable to the Trustee would not entitle the Trustee to recover from either TDC or Newline. *See Nat'l Fire & Marine Ins. Co. v. Genesis Healthcare, Inc.*, No. CV 22-3377, 2023 WL 8711823, at *3 (3d Cir. Dec. 18, 2023) (finding that a decision against a Party would be "an advisory opinion based upon a hypothetical set of facts" because that Party could not be reached by judgment.).

In Opposition, the Trustee all but admits that its claims are moot as to TDC and Newline. *See* ECF No. 478 at 2–3. In opposition, the Trustee sets forth a judicial economy argument, arguing that "the substantive issues related to [Defendants TDC and Newline's] liability turn on the same Order that Governs every other insurer in the 2016–17 Tower." *Id.* at 4. For that reason, the Trustee urges the Court not to dismiss the charges against TDC and Newline because of a "risk of fractured appellate review[.]" *Id.* The Trustee does not, however, address the argument that his arguments are moot as to these Defendants. Absent an active case or controversy, this Court does not have jurisdiction over TDC and Newline, regardless of concerns regarding judicial economy. *See Hamilton*, 862 F.3d at 355. Even so, the Court finds that judicial economy is benefitted from the dismissal of these Defendants, as there is no possibility that the Trustee can recover from TDC or Newline under the 2016–2017 Product Policies. ECF No. 470 ¶ 18. Rather than keeping TDC and Newline in this already complex matter, judicial economy is better served by this Court releasing parties over whom the Court cannot issue a judgment.

## IV. Conclusion

For the foregoing reasons, the Court will **GRANT** Defendant TDC and Defendant Newline's Motion for Summary Judgment (ECF No. 468). An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**